**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

TDG ACQUISITION COMPANY, LLC,

                         Plaintiff,

    -vs-                                       DECISION & ORDER

VUZIX CORPORATION, PAUL J. TRAVERS,     13-CV-6035-CJS-MWP
JOHN DOE #1,

                         Defendants.

---

**APPEARANCES**

For Plaintiff:                      Barry I. Friedman, Esq.
                                   Brian T. Must, Esq.
                                   Metz, Lewis Brodman Must O'Keefe LLC
                                   535 Smithfield Street
                                   Suite 800
                                   Pittsburgh, PA 15222
                                   (412) 918-1110

For Defendants:                 Kimberly I. Shimomura, Esq.
                                   Stephen B. Salai, Esq.
                                   A. Paul Britton, Esq.
                                   Harter, Secrest and Emery, LLP
                                   1600 Bausch & Lomb Place
                                   Rochester, NY 14604-2711
                                   (585) 231-1382

**INTRODUCTION**

     **Siragusa, J.** In this case Plaintiff alleges unfair competition pursuant to 15 U.S.C. § 1125(a) and computer fraud and abuse pursuant to 18 U.S.C. § 1030, as well as tortious interference with a business relationship and unfair competition pursuant to state law. It is before the Court on Defendants' Rule 12(b)(6) motion requesting dismissal of

> this action on the ground that the written Asset Purchase Agreement among the parties that is the subject of the Complaint provides that all disputes between the parties arising out of, relating to, or in connection with that agreement and its related agreements and their performance are to be resolved through mandatory arbitration as provided in the agreement.

Defs.' Notice of Motion at 1, Feb. 8, 2013, ECF No. 13. For the reasons stated below, Defendants' application is granted.

## FACTUAL BACKGROUND

For the purposes of this motion, the Court assumes that the allegations in the complaint are true. Plaintiff TDG Acquisition Company, LLC ("TDG"), purchased certain intellectual property from Vuzix Corporation ("Vuzix") relating to hands free displays for accessing data and video. Those displays have military, commercial, industrial, and consumer applications. As part of the purchase, Vuzix agreed not to compete for business from military, defense and security organizations. TDG alleges that "Vuzix immediately violated its obligation and the Asset Purchase Agreement."[1] Compl. ¶ 2.

The Asset Purchase Agreement, dated June 15, 2012, was signed by James P. Balet ("Balet") on behalf of TDG and by Paul J. Travers ("Travers") on behalf of Vuzix. That Agreement contains the following arbitration clause:

> Section 10.06 **Arbitration**.
>
> (a) General. All controversies and disputes between the Parties arising out of, relating to or in connection with the interpretation, performance or enforcement of this Agreement, any Transaction Document or the Transactions (each, a "**Dispute**") shall be finally resolved and decided as provided in this Section 10.06.

---

[1] The actual text of the Asset Purchase Agreement (sometime referred to by the Court as "Agreement") is attached to the Declaration submitted by Travers and filed on February 8, 2013, ECF No. 14.

> (b) Negotiated Resolution. Any Party that desires to raise a Dispute shall give written notice thereof to the other Party, which notice shall state with reasonable specificity the subject to the Dispute and the principal facts underling the Dispute. In the event that a Dispute arises between the Parties, the Parties shall promptly meet and negotiate in good faith to reach an amicable resolution of the Dispute.
>
> (c) Arbitration. If the Parties are unable to resolve any Dispute through negotiation within thirty (30) days after the notice of Dispute, except as provided in Sections 10.05(d) and (e) below, the Dispute, whether it is based on federal, state or foreign Law and whether it is grounded in common law or statutory law, shall be settled exclusively by arbitration conducted as provided herein, and otherwise in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("**AAA**")….
>
> (e) Other Relief. The procedures specified in this Section 10.06 shall be the sole and exclusive procedures for the resolution of disputes between the Parties arising out of or relating to this Agreement, any other Transaction Document or the Transactions, and, without limiting the generality of the foregoing, a Party, without prejudice to the above procedures, may seek an injunction, specific performance or other legal or provisional equitable relief from the arbitrator(s) pursuant to the AAA Optional Rules for Emergency Measures of Protection (or any other AAA rules providing for equitable or other similar types of relief) or, in the event such relief is not available or inappropriate, judicial relief from a tribunal other than the AAA if in that Party's sole judgment such action is necessary to avoid irreparable damage or to preserve the status quo and that money damages will not provide an adequate remedy.

Asset Purchase Agreement Section 10.06, Feb. 8, 2013, ECF No. 14-1. Section 1.01 of

the Agreement defines the following relevant terms:

> "**Shared Services Agreement**" means the Shared Services Agreement that is attached as Exhibit F….
>
> "**Transaction Documents**" means this Agreement and any other agreements, documents, certificates or instruments to be executed and/or delivered in connection with the Transactions and all Schedules including the Bill of Sale, the Assignment and Assumption Agreement, the Shared Services Agreement, the Authorized Reseller Agreement, and the License Agreement.

3

> "**Transactions**" means the transactions contemplated by this Agreement and the other Transaction Documents.

Asset Purchase Agreement Section 1.01. The parties also executed a Shared Services Agreement, also dated June 15, 2012, and signed by Balet for TDG and Travers for Vuzix. In that document, the following section relates back to the Asset Purchase Agreement; "1.1 <u>Definitions</u>. Capitalized terms used herein (including the Appendix hereto) and not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement." Shared Services Agreement section 1.1. The Shared Services Agreement does not have an arbitration clause, but does contain two sections that are relevant to the Court's decision here:

> 4.3 **<u>Injunctive Relief</u>**. Seller, on the one hand, and Buyer, on the other, acknowledge and agree that the other party would be damaged irreparably if any provisions of ARTICLE IV are not performed in accordance with their specific terms or are otherwise breached, and that money damages alone would be an inadequate remedy to compensate the other party for any such breach. Accordingly, each party agrees that the other party will be entitled to an injunction or injunctions to prevent breaches of the provisions of ARTICLE IV and to enforce specifically ARTICLE IV in any action instituted in any court of the United States or any state thereof having jurisdiction over the parties and the matter, in addition to any other remedy to which a party may be entitled at law or in equity, which other remedies, including monetary damages, will in no way be limited by the foregoing….
>
> 6.13 **<u>Consent to Jurisdiction</u>**. Each of the parties irrevocably submits to the exclusive jurisdiction of (a) the courts of the State of Delaware, and (b) the United States District Court for the Western District of New York , for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby. Each of the parties agrees to commence any action, suit or proceeding relating hereto either in the United States District Court for the Western District of New York or if such suit, action or other proceeding may not be brought in such court for jurisdictional reasons, in the applicable New York state court sitting in Monroe County, New York. Each of the parties further agrees that service of any process, summons, notice or document by U.S. registered mail to such party's respective address set forth above shall be effective service

4

of process for any action, suit or proceeding in New York with respect to any matters to which it has submitted to jurisdiction in this Section 6.13. Each of the parties irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in (i) the New York state court sitting in Monroe County, New York, or (ii) the United States District Court for the Western District of New York, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

*Id.* sections 4.3 & 6.13.

In its complaint, TDG details two incidents in support of its causes of action: (1) a Vuzix employee passed himself off as the vice president of TDG, used that vice president's email account to contact a prospective TDG customer, and falsely represented the nature, characteristics and qualities of TDG's services and commercial activities, all without authorization; and (2) Paul J. Travers made false and misleading statements to a representative of the United States Army Contracting Command that TDG, to which work was to be transferred, would not be able to perform the work, and caused the Army to not award the contract to TDG.

## STANDARDS OF LAW

### *Motion to Dismiss*

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of right to relief above the speculative level, on the assumption that all the allegations action will not do. Factual

> allegations must be enough to raise a in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotations omitted). *See also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted*); Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

***Documents Included in the Complaint***

Both parties have relied upon documents incorporated in the complaint in support of their positions. As the Court of Appeals stated, "[f]or purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and

documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit...." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted). Thus, the Court will employ the same rule in examining the papers outside the complaint relied upon by the parties here.

***Scope of Arbitration Agreements***

The Southern District addressed a court's duty to construe arbitration clauses broadly in in *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 420, 425 (S.D.N.Y. 1998), writing:

> Given the strong federal policy favoring arbitration as an alternative means of dispute resolution, a court must "construe arbitration clauses as broadly as possible, resolving any doubts concerning the scope of arbitrable issues in favor of arbitration." *Oldroyd v. Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir. 1998) (citation and quotations omitted). A broadly-worded arbitration agreement "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Id.* at 76 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)).
>
> In determining whether a particular claim falls within the scope of an arbitration agreement, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). "If these factual allegations 'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624-25 n.13, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)).
>
> Applying this standard in *Campaniello I*, the Second Circuit held that Campaniello's claims were covered by the arbitration agreement:
>
>> [Campaniello's claims] essentially involve claims that appellees sought fraudulently to violate and terminate the Gidatex Agreement; clearly these claims touch matters involved in the agreement. Similarly, the [claim for unjust enrichment] alleges that Gidatex received "unjust" benefits through "repudiation and

7

>>termination of plaintiffs' agency agreement." … This claim is naturally dependent on [Campaniello's] rights under the Gidatex Agreement and also touches matters covered by the Gidatex Agreement; thus, the unjust enrichment claim is also subject to mandatory arbitration.

*Campaniello I*, 117 F.3d at 668.

*Gidatex, S.r.L.*, 13 F. Supp. 2d at 425.

### *Subjects of Arbitration*

In *3-J Hospitality, LLC v. Big Time Design, Inc.*, No. 09-61077-CIV-MARRA/JOHNSON, 2009 U.S. Dist. LEXIS 100601 (S.D. Fla. Oct. 27, 2009), the district court was faced with a situation similar to the one before this Court and discussed the arbitrability of claims under the Lanham Act, writing:

> Here, the mediation clause provides for mediation of "[a]ny claim, dispute or other matter in question *arising out of or related to* this agreement[.]" *See* Comp. Exh. C. at 34 (emphasis added). As such, the mediation clause is considered "broad," rather than "narrow," because it evidences the parties' intent to have mediation serve as the primary recourse for disputes connected to the agreement containing the clause. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir. 2001).
>
> * * *
>
> In cases where the clause is "broad", as in this case, Lanham Act claims are subject to alternative dispute resolution under the parties' agreement. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 723-24 (Lanham Act claims were arbitrable where agreement had broad arbitration clause); *NRP Group, Inc. v. Hydropress, LLC*, 2007 U.S. Dist. LEXIS 5110, 2007 WL 201259 (S.D. Fla. 2007) (compelling arbitration of all claims, including those for violations of the Lanham Act). Additionally, unfair competition claims are subject to alternative dispute resolution when faced with a "broad" clause. *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993) (claims for tortious interference with contract, tortious interference with prospective advantage, trademark infringement, unfair competition, civil conspiracy, fraudulent misrepresenttation, declaratory relief, and abuse of process are subject to arbitration under broad arbitration clause); *NCR Corp. v. Korala Associates, Ltd.*, 512

> F.3d 807 (6th Cir. 2008) (holding that unfair competition claim was arbitrable as "arising out of or relating to" the parties' licensing agreement); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) (construing a broad arbitration clause and holding that RICO claims, Robinson-Patman Act claims, common law fraud claims, unfair competition claims, and unjust enrichment claims were all arbitrable); *Olsher Metals Corp. v. Olsher*, 2003 U.S. Dist. LEXIS 27516, 2003 WL 25600635, *8-9 (S.D. Fla. 2003) (holding that each of the plaintiff's claims, including allegations of unfair competition, were subject to broad arbitration clause).

*3-J Hospitality, LLC*, 2009 U.S. Dist. LEXIS 100601, *4–7.

## ANALYSIS

The Court's role in this dispute was outlined by the Second Circuit in *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996), where it wrote:

> Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960)). The Federal Arbitration Act creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L.Ed.2d 765 (1983). Any arbitration agreement affecting interstate commerce, such as the one at issue, is subject to the Act. *Id.; see* 9 U.S.C. §§ 1 & 2 (1988).
>
> [7] Pursuant to section 4 of the Federal Arbitration Act, the court
>
>> shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.
>
> 9 U.S.C. § 4 (1988). The role of the courts in reviewing matters subject to arbitration, therefore, is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate, in whole or in part. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395,

>403-04, 87 S. Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967). Thus, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Technologies,* 475 U.S. at 649, 106 S. Ct. at 1418; *see also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546-47, 84 S. Ct. 909, 913-13, 11 L.Ed.2d 898 (1964). In other words, the court must determine whether a given issue falls within the scope of the parties' undertaking to accept arbitration.

*PaineWebber Inc.*, 81 F.3d at 1198**.**

The two agreements before the Court contain contradictory provisions concerning the settlement of disputes. The Asset Purchase Agreement encompasses more than just itself. By its terms, it also specifically includes, "any other agreements, documents, certificates or instruments to be executed and/or delivered in connection with the Transactions and all Schedules including the Bill of Sale, the Assignment and Assumption Agreement, the Shared Services Agreement, the Authorized Reseller Agreement, and the License Agreement." Asset Purchase Agreement, "Transaction Documents" at 9.

The Shared Services Agreement has two provisions that could be read as contradicting the general agreement to arbitrate: the injunctive relief provision and the jurisdiction provision. The injunction clause of the Shared Services Agreement reads, in part, "each party agrees that the other party will be entitled to an injunction or injunctions to *prevent* breaches of the provisions of ARTICLE IV and *to enforce specifically ARTICLE IV in any action instituted in any court of the United States* or any state thereof *having jurisdiction over the parties and the matter*, in addition to any other remedy to which a party may be entitled at law or in equity, which *other remedies*, including monetary damages, *will in no way be limited by the foregoing*." Shared

Services Agreement section 4.3, Jun. 15, 2012, ECF No. 14-3 (emphasis added). The language clearly states that each party is *entitled* to enforce the confidentiality article via a court action for injunctive relief.

The language from the Shared Services Agreement, quoted above, contradicts the beginning of the Asset Purchase Agreement section 10.06, which states in pertinent part that, "[a]ll controversies and disputes between the Parties arising out of, relating to or in connection with the interpretation, performance or enforcement of this Agreement, any Transaction Document or the Transactions (each, a "**Dispute**") shall be finally resolved and decided as provided in this Section 10.06." Asset Purchase Agreement section 10.06(a).

"Under the FAA,[2] the policy in favor of arbitration generally requires that any ambiguity about the scope of arbitrable issues be decided in favor of arbitration." *Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC*, 371 F. Supp. 2d 571, 574 (S.D.N.Y. 2005). The Asset Purchase Agreement section 10.05 sets out that the Agreement is governed by New York law. In that event, the Second Circuit wrote:

> New York follows the common law rule that, "[i]n interpreting a contract, the intent of the parties governs," and therefore "[a] contract should be construed so as to give full meaning and effect to all of its provisions." *American Express Bank Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990), *appeal denied,* 77 N.Y.2d 807, 569 N.Y.S.2d 611, 572 N.E.2d 52 (1991); *see also Tigue v. Commercial Life Ins. Co.,* 631 N.Y.S.2d 974, 975 (4th Dep't 1995) ("[T]he court must ascertain the intent of the parties from the plain meaning of the language employed."). In interpreting a contract, "[w]ords and phrases are given their plain meaning. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement." *American*

---

[2] Referring to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, originally enacted in 1925 as the United States Arbitration Act. 68 Cong. Ch. 213, Feb. 12, 1925, 43 Stat. 883, 883.

> *Express,* 164 A.D.2d at 277, 562 N.Y.S.2d at 614 (citations omitted); *see also Heller v. Pope,* 250 N.Y. 132, 135, 164 N.E. 881 (1928). Furthermore, where "the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law," and a claim turning on that interpretation may thus be determined by summary judgment or by dismissal. *American Express,* 164 A.D.2d at 277, 562 N.Y.S.2d at 614; *see also Tigue,* 631 N.Y.S.2d at 974.
>
> As *Mastrobuono* makes clear, the common-law rule of contract interpretation that "a court should construe ambiguous language against the interest of the party that drafted it" applies in interpreting arbitration agreements. 514 U.S. at ----, 115 S. Ct. at 1219; *see also Graff v. Billet,* 64 N.Y.2d 899, 902, 487 N.Y.S.2d 733, 734-35, 477 N.E.2d 212 (1984). The purpose of this rule is "to protect the party who did not choose the language from an unintended or unfair result." *Mastrobuono,* 514 U.S. at ----, 115 S. Ct. at 1219.

*PaineWebber Inc.*, 81 F.3d at 1199. The Court considers that the Asset Purchase Agreement and the Shared Services Agreement are part of the same contract, since the Asset Purchase Agreement incorporates all the documents signed by the parties on June 15, 2012, as part of the transaction between them. Consequently, in construing the contract to give full meaning and effect to *all* of its provisions, the Court determines that Article IV of the Shared Services Agreement relating to confidentiality excepts from the broad arbitration clause court ordered injunctive relief.

The facts of the complaint implicate the confidentiality provision of Article IV of the Shared Services Agreement since TDG alleges that an employee of Vuzix impersonated a TDG vice president by using, without authorization, his email account to communicate with a prospective TDG customer. In that regard, Article IV defines the type of information protected as follows: "the term 'Confidential Information' means any and all non-public or trade secret information related, in any manner whatsoever, to the business, operations, or condition (financial or otherwise) of a party hereto, whether

now existing or acquired or developed after the date hereof." Shared Services Agreement section 4.4. Article IV also imposes a duty on the parties to, "not use or permit the use of (without the prior written consent of the other party) and shall keep, and shall cause its consultants and advisors to keep, confidential all Confidential Information (hereafter defined) of the other party received pursuant to or in connection with this Agreement." *Id.* section 4.1. Impersonating an employee of one party to communicate with a potential customer fits within the Agreement's definition of confidential information.[3]

The Court now turns to the other incident, that is TDG's allegation that Travers made false and misleading statements to a representative of the United States Army Contracting Command, which resulted in the non-award of a contract to TDG. TDG has argued that since Travers is not a party to the Asset Purchase Agreement, the mandatory arbitration clause does not apply to the allegations against him.

However, there is no dispute that Travers is a party to the Restrictive Covenants Agreement. The Restrictive Covenants Agreement is also part of the Asset Purchase Agreement, as shown in section 8.01(i), and is included within the definition of Transaction Document in section 1.01. The Restrictive Covenants Agreement contains a Remedies provision that reads as follows:

> 5. Remedies. In addition to all of the remedies otherwise available to a party, including the recovery of damages, each party shall have the right

---

[3] James Donnelly, vice president of business development at TDG, complained that, "[t]here is an email that appears to have been sent from me to the customer on 12/21/12. I have never seen an inquiry from this customer and the phone number on the bottom of the email is for Wilfred Victoria who is a Vuzix sales person. It is clear that they are reading my email and even responding to customers from my account." Email from James Donnelly (Jan. 2, 2013 11:19:06 AM EST), ECF No. 1-3. Vuzix denies that it intercepted or read email belonging to TDG.

>   to injunctive and equitable relief to restrain and enjoin any actual or
>   threatened breach of any of the provisions of this Agreement, including
>   temporary restraining orders and/or preliminary or permanent injunctions
>   to restrain or enjoin any such breach or threatened breach, without the
>   necessity of posting a bond, cash or otherwise. All of a party's remedies
>   for the breach or threatened breach of any of the provisions of this
>   Agreement shall be cumulative and the pursuit of one remedy shall not be
>   deemed to exclude any and all other remedies available to such party.

Restrictive Covenants Agreement ¶ 5, Jun. 15, 2012, ECF No. 14-2. This provision gives TDG the "right" to seek injunctive relief. However, unlike the injunctive relief provision of the Shared Services Agreement, the remedies provision in the Restrictive Covenants Agreement is consistent with the Asset Purchase Agreement. Consequently, the Court finds that the dispute involving Travers is subject to arbitration.

Finally, the Court considers the effect of dismissal on the injunctive relief it ordered. Decision and Order, filed on February 5, 2013, ECF No. 10. During oral argument, Vuzix's counsel agreed that even if the complaint were dismissed, the Court's prior Decision and Order directing Vuzix Corporation to:

>   [P]reserve all electronically stored information contained on its email
>   server, including halting the routine destruction or overwriting of any log
>   files, including transaction, client access, and mailbox audit logs;
>   database files; or similar files maintained on the email server or any
>   separate disk containing any such files from the email server…
>
>   [P]reserve all archive, backup, or disaster recovery copies of its email
>   server created from June 15, 2012, to the present date…[and]
>
>   [P]reserve all communications between Vuzix Corporation and any
>   military, defense, security, commercial, or industrial organizations…

ECF No. 10 at 2, would remain in effect.

**CONCLUSION**

Accordingly, Defendants' motion to dismiss the complaint in its entirety, ECF No. 13, is granted.   The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated:   May 8, 2013
           Rochester, New York

                    ENTER:

                                /s/ Charles J. Siragusa
                                CHARLES J.   SIRAGUSA
                                United States District Judge