**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

TDG ACQUISITION COMPANY, LLC,

                                      Plaintiff,

            -vs-                              DECISION & ORDER

VUZIX CORPORATION, PAUL J. TRAVERS,      13-CV-6035-CJS-MWP
JOHN DOE #1,

                                      Defendants.

---

**APPEARANCES**

For Plaintiff:                    Barry I. Friedman, Esq.
                                 Brian T. Must, Esq.
                                 Metz Lewis Brodman Must O'Keefe LLC
                                 535 Smithfield Street, Suite 800
                                 Pittsburgh, PA 15222
                                 (412) 918-1110

For Defendants:              Kimberly I. Shimomura, Esq.
                                 Stephen B. Salai, Esq.
                                 A. Paul Britton, Esq.
                                 Harter, Secrest and Emery, LLP
                                 1600 Bausch & Lomb Place
                                 Rochester, NY 14604-2711
                                 (585) 231-1382

**INTRODUCTION**

     **Siragusa, J.** On May 10, 2013, the Court granted Defendants' application to dismiss the case in favor of arbitration, to which the parties had agreed in their contract. Decision and Order, May 8, 2013, ECF No. 26. The matter is back before the Court on an application by prevailing counsel for an award of attorney's fees. Motion for Atty's

Fees, May 22, 2013, [ECF No. 29](#). For the reasons stated below, the application is granted, but the fees requested are adjusted pursuant to case law.

## FACTUAL BACKGROUND

Plaintiff TDG Acquisition Company, LLC ("TDG"), purchased certain intellectual property from Vuzix Corporation ("Vuzix"). The purchase agreement mandated arbitration for most disputes. Nevertheless, TDG filed suit in this Court alleging that: (1) a Vuzix employee passed himself off as the vice president of TDG, used that vice president's email account to contact a prospective TDG customer, and falsely represented the nature, characteristics and qualities of TDG's services and commercial activities, all without authorization; and (2) Paul J. Travers made false and misleading statements to a representative of the United States Army Contracting Command that TDG, to which work was to be transferred, would not be able to perform the work, and caused the Army to not award the contract to TDG.

The agreements at issue permitted TDG to seek injunctive relief in the Court, but mandated that all other disputes be resolved through arbitration. The Court granted TDG's *ex parte* application for an injunction, and, on Vuzix's motion, dismissed the case pursuant to the parties' arbitration agreement. Vuzix now seeks attorney's fees for its motion to dismiss, to which it contends it is entitled by virtue of TDG's refusal to arbitrate. TDG opposes the motion, arguing that it did not refuse to arbitrate, but merely sought injunctive relief "for claims reasonably believed to fall outside the purview of the parties' arbitration clause." Pl.'s Mem. in Opp'n to Def. Vuzix Corporation's Mot. for Atty's Fees, Aug. 2, 2013, [ECF No. 34](#).

**STANDARDS OF LAW**

With regard to calculating attorney fees, the Supreme Court addressed the issue in the context of a civil rights case and stated that,

> [t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). Notwithstanding the Supreme Court's use of the lodestar method in *Hensley*, the Second Circuit, in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), observed that the Supreme Court had left intact the twelve factors considered by the Fifth Circuit in its decision, *Johnson* v. *Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). The Second Circuit outlined the confusion engendered in the fee-setting jurisprudence, concluding that, "[t]he net result of the fee-setting jurisprudence here and in the Supreme Court is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." *Arbor Hill*, 522 F.3d at 189.[1] Later, the Supreme Court clarified in *Texas State Teacher Ass'n v. Garland Independent School Dist.*, 489 U.S. 782 (1989), the law as it applies in a case

---

[1] The panel's first *Arbor Hill* decision, reported at 493 F.3d 110 in 2007, was superseded by this decision, reported at 522 F.3d 182 in 2008. Interestingly, retired Supreme Court Associate Justice Sandra Day O'Connor, sat on the three-judge panel that decided *Arbor Hill*. Justice O'Connor was on the Supreme Court and in the majority when it decided *Hensley*, and authored the Supreme Court's opinion in *Texas State Teachers Ass'n*. This Court applied *Arbor Hill* in *Sinclair v. City of Rochester*, No. 07-CV-6277, 2007 U.S. Dist. LEXIS 77566, *6 (W.D.N.Y. Oct. 18, 2007) in denying an attorney fee application for a removed case remanded to state court.

where a plaintiff has achieved limited success, writing:

> The Court [in *Hensley*] then went on to establish certain principles to guide the discretion of the lower courts in setting fee awards in cases where plaintiffs have not achieved complete success. Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, we indicated that "[t]he congressional intent to limit [fee] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley*, *supra*, 461 U.S. at 435, 103 S. Ct. at 1940. In the more typical situation, where the plaintiff's claims arise out of a common core of facts, and involve related legal theories, the inquiry is more complex. In such a case, we indicated that "the most critical factor is the degree of success obtained." 461 U.S. at 436, 103 S. Ct. at 1941. We noted that in complex civil rights litigation, "the plaintiff often may succeed in identifying some unlawful practices or conditions," but that "the range of possible success is vast," and the achievement of prevailing party status alone "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Ibid*. We indicated that the district courts should exercise their equitable discretion in such cases to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff. *Id.* at 437, 103 S. Ct., at 1941.

*Texas State Teachers Ass'n*, 489 U.S. at 789–90.

## ANALYSIS

### *Vuzix is Entitled to an Award of Attorney's Fees*

At issue is section 10.06(d) of the Asset Purchase Agreement, which reads as follows:

> (d) Exclusive Remedies. The failure or refusal of any Party to submit to arbitration or any of the other dispute resolution mechanisms specified in Section 10.05(c) above shall be deemed a breach of this Agreement. If any Party seeks and secures judicial intervention requiring enforcement of this Section 10.06, such Party shall be entitled to recover from the other Party in such judicial proceeding all costs and expenses, including reasonable attorneys' fees, that it was thereby required to incur.

Asset Purchase Agreement section 10.06(d), Jun. 15, 2012, ECF No. 31-2. In support

4

of their motion, Defendants submitted an affidavit asserting the following:

> Mr. Britton[2] and I both conferred extensively with opposing counsel concerning the action by email and by phone and raised the issue of the mandatory arbitration provisions. However, the plaintiff was unwilling to withdraw its action. We concluded that it would be appropriate and proper for the defendant to move to dismiss the action in lieu of filing an Answer.

Salai Decl. ¶ 11, May 22, 2013, ECF No. 31.

The difficulty, however, is that the Court found TDG was acting within the scope of the agreement between it and Vuzix when it sought injunctive relief, and the relief was granted and remains in force. The means by which TDG sought to invoke the jurisdiction of the Court and obtain that relief was through a complaint alleging the two allegations specified above. The Court determined that the allegation that a Vuzix's employee was impersonating one of TDG's officers supported the injunctive relief being sought. With regard to the other allegation, that Travers made false and misleading statements resulting in tortious interference with TDG's business relationship with the United States Army Contracting Command, the Court determined that allegation was subject to the mandatory arbitration clause.

TDG argues that it's filing of a complaint in this Court, not limited to seeking injunctive relief,[3] was not a "failure or refusal" to "submit to the authority of arbitration." It cites two cases from this Circuit in support of its contention: *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198-99 (2d Cir. 2004); and *Empresa Generadora de ElectricidadItabo, S.A. v. Corporacion Dominicana de Empresas Electricas Estatales*, No. 05 Civ.

---

[2] A. Paul Britton, Esq., is co-counsel with Mr. Salai.

[3] TDG also sought "the grant of monetary" relief and demanded a jury trial. Compl. at 8, Jan. 24, 2013, ECF No. 1.

5004 RMB, 2005 WL 1705080, at *7-8, 2005 U.S. Dist. LEXIS 14712, *22 (S.D.N.Y. July 18, 2005) ("*Itabo*"). In *LAIF X*, the defendant had commenced suit, but also answered the arbitral demand challenging the arbitrability of LAIF X's claims before the arbitrator. *Id.* at 199. The Second Circuit stated, "Telinor's litigation in Mexico of certain claims arguably within the scope of the Axtel arbitration clause suggests that Telinor would prefer not to arbitrate those issues. Without an attendant refusal to arbitrate, however, this preference does not matter." *Id.* at 199. Although the Court of Appeals was interpreting § 4 the Federal Arbitration Act, the language is similar to section 10.06(d):

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (1954). The operative language in section 10.06(d), "[t]he failure or refusal of any Party to submit to arbitration or any of the other dispute resolution mechanisms specified in Section 10.05(c) above shall be deemed a breach," is similar enough to § 4 to make the holding in *LAIF X* relevant. Turning to TDG's second case cited in support, *Itabo*, there the district court held that, "A challenge to arbitrability 'does not constitute a 'refusal to arbitrate' on the part of respondents." *ITABO*, 2005 U.S. Dist. LEXIS 14712, *22 (citing *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004)).

TDG further argues that it acknowledged in its motion papers opposing Vuzix's motion to dismiss that certain of its claims against Vuzix were subject to arbitration, but

6

that it reasonably thought the claims it brought in this Court were not. The Court recognized the conflicting provisions of the Asset Purchase Agreement's arbitration clause with the Shared Services Agreement with its clear authorization to seek injunctive relief in a court. However, the conflict was clearly limited to Article IV of the Shared Services Agreement, which pertained to confidentiality. The impersonation claim fit within that Article, but the tortious interference claim did not.

In its reply memorandum, Vuzix argues that since TDG has never taken steps to commence arbitration of its claims, it has "refused" to arbitrate. Additionally, Vuzix's position is that because TDG did not withdraw its lawsuit when urged to do so by Vuzix's counsel, who cited to the mandatory arbitration provision of the Asset Purchase Agreement, it "refused" to arbitrate. Vuzix does not argue that the question of arbitrability was one solely for an arbitrator to make. Therefore, the Court is persuaded by TDG's cases, cited above, that merely challenging the arbitrability of a dispute does not constitute a refusal to arbitrate. Since TDG has not refused to arbitrate, it has not breached that portion of section 10.06(d) of the Asset Purchase Agreement.

However, section 10.06(d) contains this language as well: "If any Party seeks and secures judicial intervention requiring enforcement of this Section 10.06, such Party shall be entitled to recover from the other Party in such judicial proceeding all costs and expenses, including reasonable attorneys' fees, that it was thereby required to incur." Asset Purchase Agreement section 10.06(d), Jun. 15, 2012, [ECF No. 31-2](ECF No. 31-2). At oral argument, counsel for TDG conceded that the issue of whether their claims were subject to arbitration could, itself, have been decided by the arbitrator. As a result of TDG's

7

lawsuit in this Court, Vuzix was required to hire counsel to respond to the complaint and seek its dismissal. Although TDG argued that section 10.06, if interpreted to require an arbitrator to decide whether the claims were subject to arbitration would have a chilling effect on TDG's ability to bring a lawsuit in this Court, this is a contract issue, and the parties could have drafted the language differently.

In that regard, the Court determines that TDG, after being placed on notice of the mandatory arbitration clause, breached section 10.06(d) of the Asset Purchase Agreement when if filed an action seeking more relief in this Court that the agreement permitted it to do. Therefore, pursuant to section 10.06(d), Defendants are entitled to reasonable attorney's fees.

***The Amount of the Fees Sought***

In their application, counsel for Vuzix state that they are not seeking any fees in conjunction with the Court's granting of injunctive relief. Salai Decl. ¶ 8 ("the defendant is *not* seeking an award of attorneys' fees with respect to any services related to the plaintiff's application for preliminary relief."[4] At oral argument, TDG disputed fees sought for services that predated the motion to dismiss, and the fees by counsel at $370 per hour for research and writing the motion to dismiss, which TDG argued was associate level work.[5]

---

[4] Since TDG's application was made *ex parte*, the Court cannot imagine what fees Defendants would have incurred in any event.

[5] TDG did not dispute the hourly rates for counsel. In any event, Vuzix has provided an affidavit from Jon O. Webster, Esq., in house senior counsel for a local corporation. Webster Decl., May 21, 2013, ECF No. 32. Mr. Webster made statements regarding the hourly fees charged by Mr. Salai ($455), Mr. Britton ($370) and paralegal Ms. Amplement ($150). He affirmed the following:

Vuzix's accompanied its eleven page memorandum of law in support of its motion to dismiss, signed by Kimberly I. Shimomura, Esq.,[6] ECF No. 15, with a twelve paragraph affidavit from Paul J. Travers, ECF No. 14, and copies of the documents pertaining to the agreements at issue. The memorandum and reply memorandum were well written and helpful to the Court. The Court is unable to determine from the papers before it whether it was unnecessary, as TDG's counsel argued, to use Mr. Britton to research and write the motion papers.

Defendants achieved only partial success with their motion to dismiss. The Court's injunction remains in effect, but Defendants' motion established that the issue of damages on the impersonation claim, and the entire tortious interference claim, cannot be litigated here. Consequently, the Court finds that Vuzix's requested fee should be reduced by one-third to consider the partial nature of their achievement. *Texas State Teachers Ass'n*, 489 U.S. at 789–90.

---

> I am familiar with the hourly rates customarily charged by attorneys practicing civil litigation in Monroe County, as I am involved from time to time in engaging the services of outside counsel on matters on behalf of Bausch & Lomb.
>
> The hourly rates customarily charged by the foregoing legal personnel during the pendency of this matter are consistent with hourly rates charged in this legal community for services performed by lawyers with their level of experience and competence in federal litigation like this. Statements for services based on such hourly rates are customarily accepted and paid by individual and corporate clients in Monroe County.

Webster Decl. ¶¶ 11–12.

[6] No billing rate is given for Kimberly I. Shimomura, Esq.

## CONCLUSION

Accordingly, Vuzix's motion, ECF No. 29, seeking an award of attorney's fees is granted, but with a reduction to reflect Vuzix's less than total success. The requested fees of $20,710.50, are reduced by one-third, or $6,903.50. The Clerk is directed to enter judgment in the amount of $13,807.00.

IT IS SO ORDERED.

Dated:   November 6, 2013
         Rochester, New York

              ENTER:

                      /s/ Charles J. Siragusa
                      CHARLES J.   SIRAGUSA
                      United States District Judge